James M. Finberg (State Bar No. 114850)
Barry R. Himmelstein (State Bar No. 157736)
Michael W. Sobol (State Bar No. 194857)
Eric B. Fastiff (State Bar No. 182260)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
jfinberg@lchb.com
bhimmelstein@lchb.com
msobol@lchb.com
efastiff@lchb.com

Attorneys for Plaintiff and the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Francisco Division)

| | |
|---|---|
| ELAINE SPIELFOGEL-LANDIS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MCI, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF 18 U.S.C. § 2702(a)(3), 47 U.S.C. § 605, AND THE CALIFORNIA UNFAIR COMPETITION LAW**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, by and through her attorneys, brings this action for damages and equitable relief, on behalf of herself and all others similarly situated, against the above-named Defendant, demanding a trial by jury, and alleges as follows:

**PRELIMINARY STATEMENT**

1. Without a Court-authorized warrant or subpoena, without any statutorily authorized permission, and without customers' knowledge or consent, Defendant has, for over four and one-half years, been secretly providing private customer telephone call records to the federal government.

2.   Federal law prohibits telecommunications companies from revealing their customers' phone call records to any person or entity, including, expressly, the federal government, absent valid legal authorization. Nonetheless, Defendant has opened its telecommunications records to direct access by the National Security Agency ("NSA") of the United States, thereby disclosing customers' private telecommunications records, including those of Plaintiff and Class Members.

## JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332(d), 18 U.S.C. § 2707, and 47 U.S.C. § 605.

4.   Venue is proper in this District under 28 U.S.C. § 1391 because Defendant transacts business and is found in this District.

## INTRADISTRICT ASSIGNMENT

5.   Venue is proper within the San Francisco division of this District under Local Rule 3-2(c) as a substantial part of the events or omissions which give rise to the claims of the class alleged herein occurred in San Francisco County

## PARTIES

6.   Plaintiff Elaine Spielfogel-Landis is an individual residing in Orange County, California. Ms. Spielfogel-Landis is and has been a subscriber and user of Defendant's residential wireline telephone services.

7.   Defendant MCI, LLC ("MCI") is a Delaware limited liability company, and the successor to MCI, Inc., which was acquired by Verizon Communications, Inc. ("Verizon") in a merger transaction that closed on January 6, 2006. As explained by MCI, Inc. in a proxy statement regarding the merger filed with the Securities and Exchange Commission, "[u]nder the merger agreement, MCI [Inc.] will merge with and into Eli Acquisition, LLC, sometimes referred to as Eli Acquisition, a direct, wholly owned subsidiary of Verizon. Eli Acquisition will continue as the surviving entity and will be renamed 'MCI, LLC.'"

8.   Defendant MCI is a "telecommunication carrier" within the meaning of the Communications Act of 1934, 47 U.S.C. §§ 151, *et seq.*

## FACTUAL ALLEGATIONS

9. In Section 222 of the Communications Act of 1934 (47 U.S.C. § 222(c)(1)), Congress imposed upon telecommunication carriers, such as Defendant, a duty to protect sensitive, personal customer information from disclosure. This information includes data concerning service customers' telephone calling histories (*i.e.*, date, time, duration, and telephone numbers of calls placed or received) or call-detail records, and such information constitutes "individually identifiable customer proprietary network information" within the meaning of Section 222 of the Communications Act of 1934.

10. Federal law prohibits the federal government from obtaining customers' call-detail records without a warrant, subpoena, or other valid legal process, and similarly prohibits telecommunications providers, such as Defendant, from giving such information to the government without a court-ordered warrant or other legally sanctioned approval.

11. On May 11, 2006, in an article entitled "NSA has massive database of Americans' phone calls," the nationwide newspaper *USA Today* reported that "[t]he National Security Agency has been secretly collecting the phone call records of tens of millions of Americans, using data provided by" Verizon and other telecommunication carriers, according to multiple sources with "direct knowledge of the arrangement." One of the confidential sources for the article reported that the NSA's goal is "to create a database of every call ever made" within the United States. The confidential sources reported that Verizon and the other carriers are working "under contract" with the NSA, which launched the program in 2001 shortly after the September 11, 2001 terrorist attacks. At the U.S. Senate confirmation hearing on his nomination to become Director of the Central Intelligence Agency, General Michael Hayden, who was the Director of the NSA at the time, confirmed that the program was "launched" on October 6, 2001.

12. The *USA Today* story was confirmed by a U.S. intelligence official familiar with the program. The story reports that the NSA requested that Verizon and the other carriers "turn over their 'call-detail records,' a complete listing of the calling histories of their millions of customers," and provide the NSA with "updates" of the call-detail records. The confidential

sources for the story reported that the NSA informed the carriers that it was willing to pay for the cooperation.

13. The *USA Today* story reported that the NSA requested that Qwest Communications, Inc. ("Qwest"), another telecommunications carrier, provide the NSA with its customers' call-detail records, but Qwest refused. Qwest requested that the NSA first obtain a court order, a letter of authorization from the U.S. Attorney General's office, or permission from a Court operating under the Foreign Intelligence Surveillance Act ("FISA"), but the NSA refused, because it was concerned that the FISA Court and the Attorney General would find the NSA's request unlawful. The NSA suggested to Qwest that its failure to cooperate might jeopardize its ability to obtain future government contracts. The *USA Today* story stated that this version of events was confirmed by an attorney for the former chief executive of Qwest who related that the company had been approached by the NSA, but denied its request for phone records because the request appeared to be unlawful.

14. As of the date of the filing of this complaint, no part of the *USA Today* story has been publicly denied by any representative of the federal government, including the NSA. Verizon, MCI's current corporate parent, initially denied that it had provided its customers' call-detail records to the NSA, but later clarified that its denial did *not* pertain to MCI, which it had recently acquired.

15. A June 30, 2006 *USA Today* story reported that 19 members of the intelligence oversight committees of the U.S. Senate and House of Representatives "who had been briefed on the program verified that the NSA has built a database that includes records of Americans' domestic phone calls," and that four of the committee members confirmed that "MCI, the long-distance carrier that Verizon acquired in January, did provide call records to the government.."

16. On information and belief, since in or about October 2001, MCI has provided the "call-detail records" of all or substantially all of its customers, including Plaintiff, to the NSA, in violation of federal law, as more particularly set forth below.

17. On information and belief, Defendant has, since in or about October 2001, been providing to the NSA, "individually identifiable customer proprietary network information" belonging to all or substantially all of its customers, including Plaintiff, in violation of federal law, as more particularly set forth below.

18. Neither MCI, the NSA, nor any other government entity has obtained a warrant or court order, or issued a valid administrative subpoena, nor has the United States Attorney General or any other governmental official provided any certification of authorization, prior to MCI providing to the federal government "call detail records" or customer proprietary network information of all or substantially all of its customers, including Plaintiff.

## TOLLING ALLEGATIONS

19. Plaintiff and the Class were ignorant of the violations of law alleged herein, and had no reasonable opportunity to discover those violations, until May 11, 2006, when the article entitled "NSA has massive database of Americans' phone calls" was published in the national newspaper *USA Today*.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of themselves and a Class, defined as:

> All individuals and entities located in the United States that have been subscribers or customers of Defendant's wireline telephone services at any time since October 6, 2001. Excluded from the Class are Defendant, Defendant's predecessors, affiliates, parents, subsidiaries, officers and directors; all federal, state, and local governmental entities; any and all judges and justices assigned to hear any aspect of this litigation, their court staffs, their spouses, any minor children residing in their households, and any persons within the third degree of relationship to any judge or justice assigned to hear any aspect of this litigation.

21. Plaintiff also brings this action, pursuant to Rule 23, on behalf of a California Subclass, defined as:

> All individuals and entities located in California that have been subscribers or customers of Defendant's wireline telephone services at any time since October 6, 2001. Excluded from the California Subclass are Defendant, Defendant's predecessors, affiliates, parents, subsidiaries, officers and directors; all federal, state, and local governmental entities; any and all judges and justices assigned

>to hear any aspect of this litigation, their court staffs, their spouses, any minor children residing in their households, and any persons within the third degree of relationship to any judge or justice assigned to hear any aspect of this litigation.

22. Plaintiff seeks certification of the Class and the California Subclass under Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

23. The Class and California Subclass each number in the millions, so that joinder of all Class and California Subclass members is impractical.

24. The claims of Plaintiff are typical of the claims of the Class and the California Subclass. Plaintiff will fairly and adequately protect the interests of the Class and the California Subclass. Plaintiff has no conflicts with any other Class or California Subclass member, and has retained competent counsel experienced in class actions, consumer, telecommunications, and civil rights litigation.

25. Common questions of law and fact exist, including:

   a. whether MCI provided its customers' call-detail records to the NSA;

   b. whether MCI violated federal law in providing the NSA with its customers' call-detail records;

   c. whether MCI violated its privacy policies in providing the NSA with its customers' call detail records;

   d. whether Plaintiff and Class members are entitled to damages; and

   e. whether Plaintiff and Class members are entitled to equitable relief.

These and other questions of law and fact are common to the Class and the California Subclass and predominate over any questions affecting only individual Class and California Subclass members.

26. A class action is a superior method for the fair and efficient adjudication of the controversy described herein. A class action provides an efficient and manageable method to enforce the rights of Plaintiff, the Class, and California Subclass members.

27. The prosecution of separate actions by individual members of the Class and California Subclass would create a risk on inconsistent or varying adjudication, establishing incompatible standards of conduct for Defendant.

28. Defendant has acted, and refused to act, on grounds generally applicable to the Class and California Subclass, thereby making appropriate relief with respect to the Class and California Subclass as a whole.

**FIRST CLAIM FOR RELIEF**
**(On Behalf of Plaintiff and the Class)**
**Disclosure Of Communications Records In Violation Of 18 U.S.C. § 2702(a)(3)**

29. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

30. In relevant part, 18 U.S.C. § 2702 provides that:

(a) Prohibitions. – Except as provided in subsection . . . (c) –

(3) a provider of . . . electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity.

31. Defendant's wireline telephone services are "electronic communication service," as that term is defined in 18 U.S.C. § 2510(15), provided to the public, including Plaintiff and Class members.

32. Defendant knowingly and intentionally divulged records or other information pertaining to Plaintiff and Class members to the NSA, a governmental entity, in violation of 18 U.S.C. § 2702(a)(3).

33. Plaintiff and Class members have not consented to Defendant's disclosure to the NSA of records or information pertaining to themselves; nor were such disclosures necessarily incident to the rendition by Defendant of electronic communication service to Plaintiff and Class members; nor were such disclosures necessarily incident to the protection of the rights or property of Defendant; nor did Defendant believe, in good faith, that an emergency involving danger of death or serious physical injury to any person required such disclosures without delay; nor were such disclosures limited to information relating to any such emergency.

34. Neither the NSA nor any other governmental entity has obtained a warrant authorizing the disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(A).

35. Neither the NSA nor any other governmental entity has obtained a court order authorizing the disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(B) and (d).

36. Neither the NSA nor any other governmental entity has issued or obtained an administrative subpoena authorized by a federal or state statute authorizing such disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(E) and (c)(2).

37. Neither the NSA nor any other governmental entity has issued or obtained a federal or state grand jury or trial subpoena authorizing such disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(E) and (c)(2).

38. Defendant has not been provided with a certification in writing by a person specified in 18 U.S.C. § 2518(7) or by the Attorney General of the United States meeting the requirements of 18 U.S.C. § 2511(2)(a)(ii)(B), *i.e.*, a certification that no warrant or court order authorizing the disclosures is required by law, and that all statutory requirements have been met.

39. The disclosures were and are not authorized by any statute or legislation.

40. Defendant's disclosures in violation of 18 U.S.C. § 2702(a)(3) were and are knowing, intentional, and willful.

41. Defendant is now divulging and will continue to divulge protected telecommunications records of Plaintiff and Class members, presenting a credible threat of immediate future harm.

42. Plaintiff and Class members have been and are aggrieved by Defendant's above described divulgence of records or other information pertaining to Plaintiff and Class members.

43. Pursuant to 18 U.S.C. § 2707(b) and (c), Plaintiff and Class members seek: (a) a declaration that the disclosures are in violation of 18 U.S.C. § 2702(a)(3); (b) a preliminary injunction restraining Defendant from continuing to make such unlawful disclosures; (c) a permanent injunction restraining Defendant from continuing to make such unlawful disclosures;

(d) statutory damages of $1000 for each Plaintiff and each Class member; (e) punitive damages; and (f) reasonable attorneys' fees and reasonable costs of this litigation.

### SECOND CLAIM FOR RELIEF
### (On Behalf of Plaintiff and the Class)
### Unauthorized Disclosure of Communications Data in Violation of 47 U.S.C. § 605

44. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

45. In relevant part, 47 U.S.C. § 605 provides that:

(a) Practices prohibited –

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence . . . thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority.

46. Defendant received, assisted in receiving, transmitted, or assisted in transmitting, Plaintiff's and Class members' interstate communications by wire.

47. By the acts alleged herein, Defendant divulged or published the "existence" of Plaintiff's and Class members' communications to the NSA, by means other than through authorized channels of transmission or reception, in violation of 47 U.S.C. § 605.

48. Defendant's disclosure and publication of the existence of Plaintiff's and Class members' communications was not authorized by any provision of 18 U.S.C. §§ 2510-2522.

49. Defendant's disclosure and publication of the existence of Plaintiff's and Class members' communications was willful and for purposes of direct or indirect commercial advantage or private financial gain, as they were paid for their cooperation, and a failure to cooperate might have jeopardized their ability to obtain lucrative government contracts.

50. Defendant failed to notify Plaintiff or Class members of the Defendant's disclosure and/or publication of the existence of Plaintiff's and Class members' communications, nor did Plaintiff or Class members consent to such disclosure and publication.

51. Pursuant to 47 U.S.C. § 605(e)(3), Plaintiff and Class members seek: (a) a declaration that the disclosures are in violation of 47 U.S.C. § 605(a); (b) a preliminary injunction restraining Defendant from continuing to make such unlawful disclosures; (c) a permanent injunction restraining Defendant from continuing to make such unlawful disclosures; (d) statutory damages of not less than $1,000 or more than $10,000 for each violation, plus, in the Court's discretion, an increase in the statutory damages of up to $100,000 for each violation; and (e) reasonable attorneys' fees and reasonable costs of this litigation.

**THIRD CLAIM FOR RELIEF**
**(On Behalf of Plaintiff and the California Subclass)**
**Unlawful and Unfair Business Practices in Violation of the**
**Unfair Competition Law, California Business & Professions Code §§ 17200,** *et seq.*

52. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

53. By engaging in the acts and practices described herein, Defendant has engaged in unlawful and unfair business practices in violation of California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.*

54. Defendant's acts and practices are unlawful because, as described above, they violate 47 U.S.C. § 222, 18 U.S.C. § 2702(a)(3), and 47 U.S.C. § 605.

55. Defendant's acts and practices are also unlawful because they violate 18 U.S.C. § 3121. In relevant part, 18 U.S.C. § 3121 provides that:

> (a) In general. – Except as provided in this section, no person may install or use a pen register or a trap and trace device without first obtaining a court order under section 3123 of this title or under the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1801 et seq.).

As defined by 18 U.S.C. § 3127:

> (3) the term "pen register" means a device or process which records or decodes dialing, routing, addressing, or signaling information

> transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication, but such term does not include any device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider or any device or process used by a provider or customer of a wire communication service for cost accounting or other like purposes in the ordinary course of its business;
>
> (4) the term "trap and trace device" means a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, provided, however, that such information shall not include the contents of any communication . . . .

56. On information and belief, Defendant has installed or used pen registers and/or trap and trace devices without first obtaining a valid court order under 18 U.S.C. § 3123 or a subpoena.

57. The pen registers and/or trap and trace devices installed and used by Defendant have captured, recorded, or decoded, and continue to capture, record or decode, dialing, routing, addressing or signaling information pertaining to Plaintiff and/or California Subclass members' wireline telephone communications.

58. Defendant did not notify Plaintiff or California Subclass members of the installation or use of pen registers and/or trap and trace devices. Plaintiff and California Subclass members have not consented to Defendant's installation or use of pen registers and/or trap and trace devices.

59. Defendant is a telecommunications carrier that obtains and has obtained customer proprietary network information by virtue of its provision of telecommunications service.

60. Defendant used, disclosed and/or provided to the NSA, a government entity, individually identifiable customer proprietary network information pertaining to Plaintiff and California Subclass members.

61. Defendant failed to notify Plaintiff or California Subclass members of the disclosure and/or provision of their personally identifiable customer proprietary network information to the NSA, nor did Plaintiff or California Subclass members consent to such.

62. Defendant's acts and practices also constitute unfair business practices in violation of California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.*, because they contravene Defendant's privacy policy, which assures Plaintiff and California Subclass members that information pertaining to their telephone calls will not be disclosed to third parties absent a valid court order or subpoena.

63. In violation of this policy and in breach of its trust with Plaintiff and Class members, including the California Subclass Members, Defendant disclosed the customer proprietary network information belonging to Plaintiff and the California Subclass, *i.e.*, their call-detail records, to the NSA without a court order or subpoena.

64. Plaintiff and the California Subclass seek restitution, injunctive relief, and all other relief available under §§ 17200, *et seq.*

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and for all others similarly situated, respectfully requests that the Court:

A. Declare that Defendant's conduct as alleged herein violates applicable law;

B. Award statutory damages to Plaintiff and the Class;

C. Award punitive damages to Plaintiff and the Class;

D. Award Plaintiff's reasonable attorneys' fees and costs of suit;

E. Award restitution and all other relief allowed under §§ 17200, *et seq.* to Plaintiff and the California Subclass;

F. Enjoin Defendant's continuing violations of applicable law; and

G. Grant such other and further relief as the Court deems just and proper.

548238.1                           - 12 -                           CLASS ACTION COMPLAINT
                                                                    CASE NO. _____

# **JURY DEMAND**

Plaintiff hereby requests a jury trial on all issues so triable.

Dated: July __, 2006         By: _____
                                Barry R. Himmelstein

James M. Finberg (State Bar No. 114850)
Barry R. Himmelstein (State Bar No. 157736)
Michael W. Sobol (State Bar No. 194857)
Eric B. Fastiff (State Bar No. 182260)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Attorneys for Individual and Representative Plaintiff Elaine Spielfogel-Landis